Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/29/2025 01:06 AM CDT

- 681 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

STATE EX REL. STEVE SEEMAN, APPELLEE AND
CROSS-APPELLANT, V. LOWER REPUBLICAN
NATURAL RESOURCES DISTRICT ET AL.,
APPELLANTS AND CROSS-APPELLEES.

STATE EX REL. SBS FARMS, INC., AND ROBERT BISHOP,
PRESIDENT, APPELLEES AND CROSS-APPELLANTS, V.
LOWER REPUBLICAN NATURAL RESOURCES
DISTRICT ET AL., APPELLANTS.

___ N.W.3d ___

Filed August 22, 2025.    Nos. S-24-326, S-24-327.

1. **Actions: Mandamus.** An action for a writ of mandamus is a law action.
2. **Judgments: Appeal and Error.** In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.
3. **Judgments: Statutes: Appeal and Error.** Questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.
4. **Immunity: Jurisdiction.** Sovereign immunity is a jurisdictional matter that can be raised at any time by a party or the court.
5. **Mandamus: Public Officers and Employees: Immunity.** Immunity does not apply if a mandamus action against a public officer or body is not in effect one against the sovereign.
6. **Actions: Public Officers and Employees: Immunity.** An action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the State and is not prohibited by sovereign immunity.
7. ____: ____: ____. Suits which seek to compel affirmative action on the part of a state official are barred by sovereign immunity, but if a suit simply seeks to restrain the state official from performing affirmative acts, it is not within the rule of immunity.

- 682 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

8. **Judgments: Collateral Attack.** When a judgment is attacked in a manner other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.

9. **Judgments: Jurisdiction: Collateral Attack.** Judgments entered without personal jurisdiction or subject matter jurisdiction are void and subject to collateral attack.

10. **Mandamus: Words and Phrases.** Mandamus is an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy in the course of the law.

11. **Mandamus: Proof.** In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.

12. **Mandamus.** An act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.

13. **Waters: Corporations: Real Estate: Due Process: Notice.** Where a corporation owns real estate having certified irrigated acres under the Nebraska Ground Water Management and Protection Act, due process requires that the corporation be served with notice reasonably calculated to inform it of the subject and issues involved in the proceeding.

14. **Statutes.** Statutory language is to be given its plain and ordinary meaning.

15. **Waters: Real Estate.** Under Neb. Rev. Stat. § 46-746(1) (Reissue 2021), a reduction of irrigated acres completed before a person acquires an interest in the real estate is not affected by the acquisition of such interest.

Appeals from the District Court for Harlan County: TERRI S. HARDER, Judge. Judgment in No. S-24-326 reversed. Judgment in No. S-24-327 affirmed as modified.

Donald G. Blankenau and Kennon G. Meyer, of Blankenau, Wilmoth & Jarecke, L.L.P., and Blake E. Johnson, of Bruning Law Group, L.L.C., for appellants.

- 683 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

David A. Domina, of Domina Law Group, P.C., L.L.O., for appellees.

Matthew R. Watson and Andrew M. Pope, of Crites, Shaffer, Connealy, Watson, Patras & Watson, P.C., L.L.O., for amicus curiae Nebraska Groundwater Coalition.

Michael T. Hilgers, Attorney General, Justin D. Lavene, and Joshua E. Dethlefsen, for amicus curiae Nebraska Department of Natural Resources.

Miller-Lerman, Cassel, Papik, and Freudenberg, JJ.

Cassel, J.

## I. INTRODUCTION

Two landowners brought mandamus actions to collaterally attack, for lack of jurisdiction, an order of a natural resources district (NRD) reducing certified irrigated acres pursuant to the Nebraska Ground Water Management and Protection Act (Act).[1] One, a corporation, owned real estate when the administrative proceeding commenced. The other owner acquired real estate after it ended. The district court granted both relief. Because the administrative record failed to establish reasonable notice to the corporation, we affirm its judgment as modified. We reverse the other judgment, because the NRD established jurisdiction over that owner's predecessor in title.

## II. BACKGROUND

To better comprehend the underlying events resulting in forfeiture of certified irrigated acres and then this action for a writ of mandamus, it is important to understand the regulation of ground water in Nebraska. We start there—briefly addressing the Republican River Compact before summarizing Nebraska's statutory framework and the rules and regulations of the local governing body. Then we discuss the

---

[1] Neb. Rev. Stat. §§ 46-701 to 46-756 (Reissue 2021).

proceedings leading to a cease-and-desist order and the two actions seeking writs of mandamus.

## 1. REPUBLICAN RIVER COMPACT

To provide for equitable division and the most efficient use of the Republican River Basin's waters, the states of Colorado, Kansas, and Nebraska signed the Republican River Compact of 1943 (Compact).[2] The Compact made specific allocations of water to each state for beneficial consumptive use.[3] Subsequently, Nebraska's increased pumping of ground water led to litigation before the U.S. Supreme Court.[4] A settlement sought to accurately measure the supply and use of the water in the basin and to help the states stay within their allocations.[5] There seems to be no dispute that the certified acres at issue here relate to lands included in the Compact.

## 2. NEBRASKA GROUND WATER MANAGEMENT AND PROTECTION ACT

The Act originated in 1975.[6] The Legislature found that "ownership of water is held by the state for the benefit of its citizens."[7]

The Legislature proclaimed that "[e]very landowner shall be entitled to a reasonable and beneficial use of the ground water underlying his or her land."[8] But it made such use "subject to the provisions of . . . the . . . Act and the correlative rights of other landowners when the ground water supply is

---

[2] 2A Neb. Rev. Stat. appx. § 1-106 (Reissue 2016).

[3] *Id.*, art. IV.

[4] See *Kansas v. Nebraska*, 574 U.S. 445, 135 S. Ct. 1042, 191 L. Ed. 2d 1 (2015).

[5] See *id.*

[6] See 1975 Neb. Laws, L.B. 577.

[7] § 46-702.

[8] *Id.*

- 685 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

insufficient to meet the reasonable needs of all users."[9] It therefore recognized that "the public interest demands procedures for the implementation of management practices to conserve and protect ground water supplies and to prevent the contamination or inefficient or improper use thereof."[10]

The Legislature found that NRDs are the "preferred entities to regulate . . . ground water related activities"[11] and specifically identified numerous powers that NRDs may exercise.[12] An NRD may "[a]dopt and promulgate rules and regulations necessary to discharge the administrative duties assigned in the [A]ct,"[13] require meters to be placed on water wells to acquire water use data,[14] conduct investigations on matters relevant to the administration of the Act,[15] and issue cease-and-desist orders to enforce provisions of the Act or of orders or permits issued under the Act.[16] According to the Act, a cease-and-desist order may be issued "following three days' notice to the person affected stating the contemplated action and in general the grounds for the action and following reasonable opportunity to be heard."[17]

An NRD encompassing a fully appropriated river basin, such as the Republican River Basin, must jointly develop, with Nebraska's Department of Natural Resources, an integrated management plan (IMP) for such basin.[18] The IMP

---

[9] *Id*.

[10] *Id*.

[11] § 46-703(3).

[12] See § 46-707.

[13] § 46-707(1)(a).

[14] § 46-707(1)(d).

[15] § 46-707(1)(f).

[16] § 46-707(1)(h).

[17] *Id*.

[18] § 46-715(1)(a).

- 686 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

should contain sufficient controls to ensure that Nebraska remains in compliance with the Compact.[19]

Controls include allocation of the amount of ground water that may be withdrawn by ground water users[20] and installation of devices for measuring ground water withdrawals from water wells.[21] As another control, an NRD may require its approval of such matters as transfers of certified irrigated acres between landowners or other persons or between parcels or tracts under the control of a common landowner or other person.[22] "Certified irrigated acres means the number of acres or portion of an acre that [an NRD] has approved for irrigation from ground water in accordance with law and with rules adopted by the district."[23]

NRDs are empowered to impose penalties for violations of its controls, rules, or cease-and-desist orders.[24] Such a penalty may include having "irrigated acres certified by the district reduced in whole or in part."[25]

The Act sets forth basic procedures for a hearing upon a violation. The violations statute states, "Before [an NRD] takes any action, notice and hearing shall be provided . . . ."[26] Another statute declares, "All hearings conducted pursuant to the . . . Act shall be of record and available for review."[27] A more general statute specifies seven "public hearing . . . requirements,"[28] including "reasonable proximity to the area

---

[19] See § 46-715(4).

[20] § 46-739(1)(a)

[21] § 46-739(1)(d).

[22] § 46-739(1)(k).

[23] § 46-706(30).

[24] § 46-746(1).

[25] *Id*.

[26] *Id*.

[27] § 46-747.

[28] § 46-743.

- 687 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

. . . affected"[29] and notice of hearing "published in a newspaper . . . at least once each week for three consecutive weeks."[30] These statutory provisions establish the framework for the proceedings upon which the present appeals focus.

### 3. Lower Republican NRD

The NRD involved in this case is the Lower Republican NRD (LRNRD). It includes portions of the Republican River Basin lying in the counties of Furnas, Harlan, Franklin, Webster, and Nuckolls. LRNRD is governed by an elected board of directors.[31]

LRNRD entered into an IMP with Nebraska's Department of Natural Resources to address instances when enforcement of LRNRD's rules and regulations are insufficient to ensure sufficient water supply in the Republican River Basin. Under the plan, inadequate enforcement could result in the department's forcing LRNRD to cease all ground water pumping within a certain area. In Furnas County, 25,500 acres are subject to being "shut down as irrigated" under the IMP if LRNRD fails to adequately regulate ground water in its district.

To control water use, LRNRD adopted "Ground Water Management Rules and Regulations." The rules provide that "[o]nce acres have been certified by the Board as Certified Irrigated Acres, such certification shall attach to the land upon which such acres are irrigated." The rules require wells to have "a properly installed and operational flow meter" and caution that "[w]ell owners and/or Operators" who have tampered with a meter are subject to penalties.

The rules set forth penalties for operating a well without a properly installed and operational flow meter. They also contemplate enhanced penalties under certain circumstances. Under rule 2-2.2, on top of specific penalties identified in the

---

[29] § 46-743(1).

[30] § 46-743(2).

[31] See Neb. Rev. Stat. § 2-3213 (Cum. Supp. 2024).

- 688 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

rules, "a Person may be subject to additional penalties, up to and including a permanent forfeiture of Certified Irrigated Acres, and/or a permanent forfeiture of all future Allocations." Circumstances warranting such a penalty include:

> (1) a second violation of any particular Rule or Regulation, (2) repeated violations of these Rules and Regulations, (3) being in violation of more than one Rule at any particular time, (4) engaging in willful and wanton misconduct, or (5) certification by the record owner to the District of the non-irrigation status of certain Certified Irrigated Acres in order to opt-out of an Occupation Tax levied by the District, which status is later found to be false in whole or in part. The Board may also pursue such forfeiture of Certified Irrigated Acres and/or Allocation if a Person has been warned on more than one occasion that they are in violation of these Rules and Regulations.

LRNRD's rules provide general directions regarding service of process or notice of hearing. The parties have not cited any rule or regulation of LRNRD specifically addressing procedures regarding a proceeding to decertify or forfeit certified irrigation acres. LRNRD's rules and regulations impose two requirements. First, notice of a complaint filing directed to an alleged violator—such as a notice of intent—"will be delivered in person, or by registered or certified mail." Second, a cease-and-desist order "shall be transmitted to the alleged violator in person or by certified or registered mail."

### 4. Events Leading to Cease-and-Desist Order

#### (a) Proceeding Initiated

Gerald Schluntz and his daughters, Julie Smith and Tamara Bishop,(collectively the Schluntzes) owned or operated farmland located within LRNRD's boundaries. During an inspection of the water flow meters on their wells, LRNRD personnel discovered tampering devices.

- 689 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

On August 3, 2016, LRNRD issued a "Notice of Intent to Issue Cease and Desist Order and Impose Penalties for Operating a Well Without a Properly Installed and Operational Flow Meter" (Notice of Intent). It stated that LRNRD intended to seek relief, including a "permanent forfeiture" of the Schluntzes' certified irrigated acres and of all future allocations. The Notice of Intent included a "Notice of Opportunity for Hearing." It provided that "LRNRD will discuss and schedule a hearing regarding this Notice at its next regularly scheduled board meeting on August 11, 2016." Attached to the Notice of Intent were "Compliance Review[s]," all of which listed Schluntz as the owner and set forth abbreviated legal descriptions. For example, one described the location as "35-2-21."

LRNRD served the Notice of Intent via certified mail on each of the Schluntzes. The return receipt for the notice addressed to Schluntz shows that it was delivered to him on August 6, 2016.

One week later, on August 13, 2016, Schluntz died.

(b) Hearing

On August 15, 2016, the board scheduled a public hearing for September 8 to provide the Schluntzes (substituting Schluntz' estate for Schluntz) with an opportunity to be heard.

Notice of hearing was served via certified mail addressed to "Estate of Gerald Schluntz," and the return receipt shows that it was received by "Brennan Bishop." Notice of the hearing was published in several area newspapers for 3 weeks, stating that the public hearing "concern[ed] tampering of flow meters owned or operated by the Estate of Gerald Schluntz, Julie Smith, and Tamara Bishop." The notice invited "[a]ll persons having an interest in these matters . . . to attend and make their views known at this time."

At the hearing, commencing in September 2016 and finishing in December, counsel appeared on behalf of the Schluntzes. The board heard testimony regarding the tampering with flow

- 690 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

meters. An employee of Schluntz admitted to installing bolts on the flow meters at Schluntz' direction. The employee testified that both he and Schluntz knew that installing the bolts would tamper with the operation of the flow meters and that such tampering was prohibited by LRNRD's rules and regulations. The employee testified that he and Steve Seeman, who had been identified as Schluntz' "partner," would be making management decisions going forward and that the tampering with flow meters would not reoccur.

Evidence showed that in 2008 and 2010, LRNRD warned Schluntz about violating LRNRD's rules and regulations, including for flow meter tampering and for irrigating acres that had been certified as nonirrigated for purposes of LRNRD's occupation tax. No penalties were imposed for those alleged violations.

In the 2016 violation proceeding, LRNRD adduced evidence that the flow meters were affixed to LRNRD-regulated ground water wells irrigating all or a portion of eight parcels of land totaling 1,107.5 certified irrigated acres. The evidence showed the parcels and ownership interests, as reflected in county assessor reports, to be:

| Parcel (A=acres;SITUS=Section-Township-Range) | Ownership |
| --- | --- |
| NE¼ 168 A - SITUS 04-1-21 | Smith and Bishop |
| SE¼ 166 A - SITUS 04-1-21 | Schluntz |
| PT SE¼ 157.29 A - SITUS 23-2-21 | Schluntz |
| SW¼, [W]½NW¼, SE¼NW¼, PT SE¼ 367 A - SITUS 26-2-21 | SBS Farms, Inc. |
| PT NE¼ 154 A - SITUS 35-2-21 | SBS Farms, Inc. |
| NW¼, PT W½NE¼, N½SW¼ 320 A - SITUS 36-2-21 | Schluntz |
| PT SE¼SE¼ 30 A - SITUS 24-2-21 | Schluntz |
| NE¼ 160 A - SITUS 25-2-21 | Schluntz |

- 691 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

The record from LRNRD's proceedings offers little information about SBS Farms, Inc. (SBS). There was no assertion that SBS should be a party to the proceedings. County assessor reports showed the address for SBS to be the same as the address shown for each of the Schluntzes. It was the same address at which the Notice of Intent was sent by certified mail to Schluntz and at which the notice of hearing was sent to his estate.

LRNRD's records included a January 2014 corporation warranty deed. The deed stated, "Schluntz Family Farms, Inc., a Nebraska Corporation, **Grantor**, as part of the reorganization of Grantor and in exchange for all of the shares of Grantor owned by **Grantee**, SBS Farms Inc., a Delaware Corporation, conveys to Grantee the following described real estate . . . ." The land conveyed by the deed included part of the real estate that was later the subject of the violation proceeding. The deed described that part as follows:

The Northeast Quarter (NE¼) of Section 35, Township 2 North, Range 21 West of the 6th P.M., Furnas County, Nebraska, EXCEPT a tract of about three (3) acres in the Northeast corner of said land deeded for cemetery purposes, and EXCEPT for a tract in the northwest corner subject to a life estate of Gerald Schluntz.

Six months later, a warranty deed conveying land from Schluntz to SBS (in consideration of $0) showed SBS to be "a Nebraska Corporation." Thus, the administrative record establishes that these deeds were recorded long before LRNRD's proceeding was initiated.

(c) Cease-and-Desist and Penalties Order

In February 2017, the board issued a cease-and-desist order, which also imposed civil penalties (the 2017 order). The board found that the Schluntzes committed repeated violations of LRNRD's rules and regulations and that they should be subject to enhanced penalties. The board ordered as follows:

1) Respondents cease and desist the use of all welds or ports in irrigation pipes which could potentially enable

- 692 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

tampering with flow meter operation on all properties owned and/or operated in the District by Respondents now or in the future.

2) Respondents' base allocation for the 2017 irrigation season be forfeited on the 1,107.5 acres of Respondents' Real Estate upon which tampering ports were discovered; and

3) Respondents' Certified Irrigated Acres be permanently forfeited, including all future allocations, on the 1,107.5 acres of Respondents' Real Estate upon which tampering ports were discovered.

### (d) Appeal

The Schluntzes attempted to obtain review of the 2017 order by filing a petition in the district court for Furnas County.[32] LRNRD moved to dismiss for lack of subject matter jurisdiction. Because there was no dispute that all hearings regarding the 2017 order were held in Harlan County, the district court for Furnas County concluded it did not have subject matter jurisdiction and sustained the motion to dismiss. Upon appeal, we concluded that the district court correctly dismissed on subject matter jurisdiction grounds.[33]

### 5. MOTIONS AND COMPLAINTS FOR MANDAMUS RELIEF

Several years later, in 2023, Seeman filed a "Motion & Complaint for Peremptory Writ of Mandamus or Alternatively Request for Alternative Writ, and other Relief" against each member of the board of directors of LRNRD and its general manager (collectively the board). On the same day, in a separate case, SBS and its president filed a substantially similar pleading.

---

[32] See § 46-750.

[33] *Estate of Schluntz v. Lower Republican NRD*, 300 Neb. 582, 915 N.W.2d 427 (2018).

- 693 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

Seeman, along with SBS and its president, (collectively relators) sought a peremptory writ of mandamus to compel the board to set aside the 2017 order that purported to permanently bar relators from using irrigation waters on certain real estate. If a peremptory writ were not granted, relators sought an alternative writ of mandamus to compel the same action. Relators alleged that the 2017 order was void for several reasons, including that it was issued against their land in a proceeding in which they were not named as a party, were not served with process, and did not have due process of law. They also alleged that it was void because it was an unlawful perpetual restraint.

According to the allegations in Seeman's complaint, Seeman was married to Schluntz and Schluntz died without a will. Seeman was not named as a party in the proceedings initiated against Schluntz' estate except in his capacity as personal representative and appeared as a party only in that capacity. Seeman alleged that at the time of the proceedings and the 2017 order, he owned no real estate in LRNRD's jurisdiction. Seeman asserted that he became the owner of the real estate affected by the 2017 order by virtue of its distribution to him from Schluntz' estate. He alleged that he now owned the five parcels that were owned by Schluntz.

In SBS' complaint, it alleged that it was a Nebraska corporation in good standing and that it leased farm real estate in LRNRD's area to Schluntz. SBS asserted that Schluntz "was not a shareholder, director, officer or authorized agent of SBS with authority to violate any laws or regulations." SBS further asserted that it was not named as a party in LRNRD's proceedings and never appeared in the case.

The board filed a general answer denying each and every allegation. The district court subsequently held a hearing on motions to dismiss separate declaratory judgment actions that were filed against the board and heard arguments about whether peremptory writs should issue.

- 694 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

## 6. District Court Orders

On July 14, 2023, the court entered an order in each case addressing the complaints seeking writs of mandamus and motions to dismiss the separate declaratory judgment actions that were filed against the board. The court dismissed the actions for declaratory judgment but granted the mandamus relief sought by relators. A week later, relators filed motions seeking attorney fees. The board timely filed a motion to alter or amend. On March 28, 2024, the court entered a judgment, styled as an order, granting mandamus relief and attorney fees.

In issuing writs in favor of relators, the court observed that the 2017 order impacted real estate they owned. The court stated that it was undisputed Seeman owned no real estate in LRNRD's jurisdiction at the time of the 2016 proceedings, that he did not acquire an ownership interest in such real estate until distribution of assets was made from Schluntz' estate in 2018, and that the 2016 proceedings were not conducted against SBS. The court issued a writ of mandamus finding that the board could not enforce the 2017 orders or penalties on persons not served in the original action. The court reasoned that the 2017 order was void as to Seeman and SBS because the board never acquired jurisdiction over them. It found that relators had a clear right to the relief sought and that it was a ministerial task for the board to stop enforcing the 2017 order against relators.

Subsequently, the court sustained the board's motion to alter or amend "to add clarifying language" to the writ. As modified, it directed the board

> not to apply its 2017 February Order as to [relators]; further, the Court hereby lifts the "permanency" provision of the 2017 Order and finds that the LRNRD may not use the 2017 February Order to prohibit Relators from engaging in the process of having the 1,107.5 acres certified by the District as "Certified Irrigated Acres";

- 695 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

and that the [board is] further Ordered to take all steps necessary including administrative steps such as recertification upon proper application by Relators to restore the real estate to its status as Certified Irrigated Acres and to permit the use of groundwater for irrigation purposes on the acres of the Relator[s].

In each case, the board filed an appeal and relators cross-appealed. The appeals were docketed in the Nebraska Court of Appeals. After the board's motion to consolidate the cases for briefing and disposition was sustained, we moved the cases to our docket.[34]

## III. ASSIGNMENTS OF ERROR

The board assigns that the district court erred in (1) finding it had subject matter jurisdiction to grant the mandamus relief it ordered, (2) permitting a collateral attack on a final administrative order that was appealed to a district court and appellate court, (3) finding relators had met their burden to show clearly and conclusively a right to the mandamus relief ordered, (4) finding relators had met their burden to show clearly and conclusively a corresponding legal duty on the part of the board to provide the mandamus relief ordered, and (5) finding that relators were entitled to attorney fees.

On cross-appeal, relators assign that the district court erred when it did not decide that the 2017 order was void for the additional reason that it was a perpetual prohibition against irrigation and upon transfer of title and use of relators' land.

## IV. STANDARD OF REVIEW

[1-3] An action for a writ of mandamus is a law action.[35] In a bench trial of a law action, the trial court's factual findings

---

[34] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2024).

[35] *Nebraska Journalism Trust v. Dept. of Envt. & Energy*, 316 Neb. 174, 3 N.W.3d 361 (2024).

- 696 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

have the effect of a jury verdict, and an appellate court will not disturb those findings unless they are clearly erroneous.[36] However, questions of law and statutory interpretation require an appellate court to reach a conclusion independent of the decision made by the court below.[37]

## V. ANALYSIS

As we discuss in more detail below, SBS owned affected property at the time of the LRNRD proceedings and Seeman obtained his affected property from Schluntz' estate after the LRNRD proceedings and the attempted appeal therefrom were concluded. These circumstances are pertinent to relators' argument that the 2017 order is void as to them. And determining whether that order is void as to relators is key to resolving the assignments of error. To explain why this is so, we set forth principles of law related to void orders and judgments that are pertinent to sovereign immunity, collateral attacks, and mandamus. Then we determine whether the 2017 order is void as to each relator. Finally, we resolve the assignments of error.

### 1. General Principles of Law

#### (a) Sovereign Immunity

[4] Sovereign immunity is a jurisdictional matter that can be raised at any time by a party or the court.[38] NRDs are political subdivisions of the state,[39] and political subdivisions have subordinate powers of sovereignty conferred by the Legislature.[40] We have long held that no suit may be maintained against the State or its political subdivisions unless the Legislature,

---

[36] *Id.*

[37] *Id.*

[38] *Garcia v. City of Omaha*, 316 Neb. 817, 7 N.W.3d 188 (2024).

[39] See § 2-3213(1).

[40] See *Lamb v. Fraternal Order of Police Lodge No. 36*, 293 Neb. 138, 876 N.W.2d 388 (2016).

- 697 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

by law, has so provided.[41] Rather than bringing the manda-
mus actions against the LRNRD, relators sued the LRNRD's
individual board members and its general manager. The board
contends that relators' actions are really seeking relief from the
LRNRD, rather than the individuals.

[5-7] With respect to an action seeking a writ of mandamus,
immunity does not apply if the mandamus action against a
public officer or body is not in effect one against the sover-
eign.[42] An action against a public officer to obtain relief from
an invalid act or from an abuse of authority by the officer or
agent is not a suit against the State and is not prohibited by
sovereign immunity.[43] The theory behind this exception to
sovereign immunity is that "acts of state officers not legally
authorized, or which exceed or abuse the authority conferred
upon them, are judicially regarded as their own acts and not
acts of the state."[44] Suits which seek to compel affirmative
action on the part of a state official are barred by sovereign
immunity, but if a suit simply seeks to restrain the state offi-
cial from performing affirmative acts, it is not within the rule
of immunity.[45]

Relators' actions requested a writ "directing and command-
ing the [board] to set aside their previous order and restore
to Relator[s] all rights to irrigation waters and their use by
[them] and upon [their] real estate." To the extent the manda-
mus actions sought to stop public officials from enforcing a
void order, there would be no immunity. But sovereign immu-
nity would preclude relief compelling affirmative action. We
implement the distinction below.

---

[41] See *Clark v. Sargent Irr. Dist.*, 311 Neb. 123, 971 N.W.2d 298 (2022).

[42] See 52 Am. Jur. 2d *Mandamus* § 74 (2021).

[43] *Community Care Health Plan of Neb. v. Jackson*, 317 Neb. 141, 9 N.W.3d
404 (2024).

[44] *Rein v. Johnson*, 149 Neb. 67, 69, 30 N.W.2d 548, 552 (1947).

[45] *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132
(2002).

- 698 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

### (b) Collateral Attack

[8] When a judgment is attacked in a manner other than by a proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.[46] That is the situation here.

[9] Judgments entered without personal jurisdiction or subject matter jurisdiction are void and subject to collateral attack.[47] If the 2017 order is void, this collateral attack is permissible.

### (c) Mandamus

[10] Mandamus is an extraordinary remedy, not a writ of right, issued to compel the performance of a purely ministerial act or duty, imposed by law upon an inferior tribunal, corporation, board, or person where (1) the relator has a clear right to the relief sought, (2) there is a corresponding clear duty existing on the part of the respondent to perform the act, and (3) there is no other plain and adequate remedy in the course of the law.[48]

[11,12] In a mandamus action, the party seeking mandamus has the burden of proof and must show clearly and conclusively that such party is entitled to the particular thing the relator asks and that the respondent is legally obligated to act.[49] An act or duty is ministerial only if there is an absolute duty to perform in a specified manner upon the existence of certain facts.[50]

If the 2017 order is void as to relators, the board would have an absolute duty not to enforce it against them.

---

[46] *In re Applications T-851 & T-852*, 268 Neb. 620, 686 N.W.2d 360 (2004).

[47] *Parish v. Parish*, 314 Neb. 370, 991 N.W.2d 1 (2023).

[48] *State ex rel. Spung v. Evnen*, 317 Neb. 800, 12 N.W.3d 229 (2024).

[49] *Id*.

[50] *Cain v. Lymber*, 306 Neb. 820, 947 N.W.2d 541 (2020).

- 699 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

## 2. Whether 2017 Order Is Void

Relators contend that the 2017 order is void because it was issued against their land in a proceeding in which they were not parties, were not served, and did not have due process. But the board contends that relators' interests are derivative of Schluntz' estate and that they had no standing at the time of the proceedings. After setting forth relevant propositions of law, we consider their application to each relator.

### (a) Propositions of Law

The right of an owner of overlying land to use ground water is an appurtenance constituting property protected by Neb. Const. art. I, § 21.[51] The interest in use of ground water is a property interest that is under due process protections.[52] Due process requires notice reasonably calculated to inform the party to the action of the subject and issues involved in the proceeding.[53] The requirements of due process are satisfied if a person has reasonable notice and an opportunity to be heard appropriate to the nature of the proceeding and the character of the rights which might be affected by it.[54]

For purposes of the Act, "[p]erson" means not just "a natural person" but also entities such as "a partnership, a limited liability company, an association, [or] a corporation."[55] LRNRD's definition of person in rule 4-1.45 is substantively the same. Seeman and SBS each qualify as a "person" under the Act and rules.

The Act provides that a cease-and-desist order may be issued following 3 days' notice "to the person affected stating the contemplated action and in general the grounds for the

---

[51] *Prokop v. Lower Loup NRD*, 302 Neb. 10, 921 N.W.2d 375 (2019).

[52] See *id.*

[53] *Id.*

[54] *Id.*

[55] § 46-706(1).

- 700 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

action and following reasonable opportunity to be heard."[56] Similarly, "[b]efore a district takes any action [against a person who violates NRD rules], notice and hearing shall be provided to such person."[57] The Act contemplates reduction of irrigated acres certified by the district as a penalty.[58]

Proper service, or a waiver by voluntary appearance, is necessary to acquire personal jurisdiction over a defendant.[59] A judgment entered without personal jurisdiction is void.[60]

### (b) SBS

The record from the LRNRD proceeding sheds little light on SBS. It contains nothing about the officers, directors, or shareholders of SBS at the time of the proceeding. County assessor reports show SBS to be an owner of real property affected by the order and to have the same mailing address as Schluntz, Smith, and Bishop. LRNRD's records show that a flow meter which had been tampered with was owned by Schluntz and affixed to a well that irrigated land owned by SBS and Schluntz. But neither the Notice of Intent nor the notice of hearing was addressed to or served upon SBS. And although the notice of hearing was published in area newspapers and invited attendance by all persons having an interest, it did not specifically mention SBS. Although LRNRD argues that "Schluntz himself represented to the LRNRD that he was the president of SBS" and provides a citation to the record, the cited record does not support the existence of any such representation.[61] The cited record merely shows that both Schluntz and SBS had the same address. We are limited by the record made by LRNRD

---

[56] § 46-707(1)(h). See, also, § 46-708(3).

[57] § 46-746(1).

[58] *Id.*

[59] *Francisco v. Gonzalez*, 301 Neb. 1045, 921 N.W.2d 350 (2019).

[60] *Id.*

[61] Reply brief for appellants at 5.

- 701 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

in its administrative proceeding and cannot speculate regarding the significance of their having the same address. The notice requirement is not burdensome. For example, certified mail addressed to SBS, at the address shown in the assessor's records, might well have been sufficient.

[13] Where a corporation owns real estate having certified irrigated acres under the Act, due process requires that the corporation be served with notice reasonably calculated to inform it of the subject and issues involved in the proceeding. SBS was a "person" under the Act who was affected by the contemplated cease-and-desist order; however, SBS was not given notice of it or of the hearing. We conclude that the 2017 order is void as to SBS.

Because the order was void, the officers, directors, and employees of LRNRD had a ministerial duty not to enforce the order. This includes not enforcing the reduction in certified irrigated acres. But to the extent that the district court's judgment can be read to compel affirmative acts, such relief is precluded by sovereign immunity. We therefore modify the judgment in that action to limit the relief accordingly.

Nothing in this opinion should be read to preclude a proper administrative proceeding against SBS seeking reduction in certified irrigated acres. We express no opinion regarding the viability or merits of any such proceeding.

(c) Seeman

Seeman's situation differs. At the time that LRNRD served the Notice of Intent, Seeman had no interest in any of the real property at issue. Although Seeman now owns tracts of land affected by the 2017 order, Schluntz owned them at the time the LRNRD proceeding commenced with the issuance of the Notice of Intent. Thus, there was no reason to provide Seeman with notice of the contemplated action at that time.

However, Schluntz died 1 week after being served with the Notice of Intent. His death occurred 2 days before LRNRD scheduled the public hearing. The record establishes that

- 702 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

LRNRD knew of Schluntz' death. The notice of public hearing identified "Estate of Gerald Shultz [sic]" as a respondent, and LRNRD served the notice addressed to "Estate of Gerald Schluntz." Further, notices of hearing that were published in area newspapers identified the "Estate of Gerald Schluntz" as an owner or operator of the relevant flow meters. The record from the LRNRD hearing shows that counsel appeared on behalf of "the respondents," i.e., "the Estate of Gerald Schluntz, Julie Smith and Tamara Bishop." The district court found that "Schluntz['] estate" appeared at the September 8, 2016, hearing and that at the hearing on December 16, Schluntz' estate "offered testimony and evidence." Testimony at the December 2016 hearing disclosed that Seeman was going to be involved in management decisions going forward. Testimony also established that before Schluntz' death, Seeman was giving orders or deciding what needed to be done.

Although LRNRD requested the district court to take judicial notice of Schluntz' probate proceedings, the court never ruled upon the request. The record before us does not include any of the probate proceedings. The district court's judgment did not specify the date of Seeman's appointment as personal representative. The court did recite that Seeman "acquired title to the land on December 26, 2018." This was premised upon the date that a "Schedule of Distribution was filed in County Court . . . and Deeds of Distribution were executed."

Seeman consistently takes the position that he acquired the real estate only upon distribution from Schluntz' estate in December 2018. His complaint did so. His brief on appeal does likewise. At oral argument, his counsel confirmed that position. We assume, without deciding, that he is correct.

But Seeman does not, and could not, attack the validity of LRNRD's order as to Schluntz and his estate. By taking the position that he owned no interest before December

- 703 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

2018, Seeman effectively conceded that he lacked standing to challenge the order until after that date. Standing refers to whether a party had, at the commencement of the litigation, a personal stake in the outcome of the litigation that would warrant a court's exercise of its subject matter jurisdiction and remedial powers on that party's behalf.[62] To have standing, the party must have some legal or equitable right, title, or interest in the subject matter of the controversy.[63] Generally, a party has standing only if he or she has suffered or will suffer an injury in fact.[64] By the time Seeman acquired his interest, the LRNRD proceedings had concluded, its order had issued, and the attempted appeals were dismissed. Our mandate on the appeal issued on August 8, 2018.

Thus, Seeman's claim implicitly attacks the controlling statute. Section 46-746(1) authorizes "penalties imposed through the controls adopted by the district, including, but not limited to, having any . . . irrigated acres certified by the district reduced in whole or in part."

[14,15] We see no ambiguity. Statutory language is to be given its plain and ordinary meaning.[65] Before Seeman acquired his interest, the decertification of irrigated acres was complete. We expressly hold that under § 46-746(1), a reduction of irrigated acres completed before a person acquires an interest in the real estate is not affected by the acquisition of such interest.

Thus, it was not clear that the 2017 order was void as to Seeman. And because Seeman brought this action seeking

---

[62] *Preserve the Sandhills v. Cherry County*, 313 Neb. 590, 985 N.W.2d 599 (2023).

[63] See *id*.

[64] *Id*.

[65] *Precision Castparts Corp. v. Nebraska Dept. of Rev.*, 317 Neb. 481, 10 N.W.3d 707 (2024).

- 704 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

mandamus, he had the burden of proof.[66] He was required to show clearly and conclusively that he was entitled to compel the board to set aside the 2017 order. He failed to do so.

We reject the notion that because the order was void as to SBS, it was void as to Seeman. The order affected real estate owned by SBS and other real estate owned by the Schluntzes. The invalidity of the part of the order addressing SBS' real estate had no relation to the order's effect on the other real estate.

We therefore conclude that the district court erred in issuing the writ of mandamus based upon a determination that the 2017 order was void as to Seeman. We turn to relators' cross-appeal.

### 3. Cross-Appeal

Because we determine that the 2017 order was not void on due process grounds as to Seeman, we consider the "prophylactic"[67] cross-appeal brought by relators. In Seeman's complaint seeking a writ of mandamus, he asserted that the 2017 order was "void because it is a perpetual restraint which is an unlawful restraint on real estate and its title, utility and marketability." The cross-appeal thus assigns that the district court erred when it did not decide that the 2017 order was void as a perpetual prohibition against irrigation and upon transfer of title and use of relators' land. This assignment of error lacks merit.

The "restraint" on the real estate was imposed by LRNRD. The Act authorizes an NRD to reduce, in whole or in part, certified irrigated acres as a penalty.[68] Relators have not assigned or argued that the Act or any statute within the Act is unconstitutional. Accordingly, LRNRD's decertification of irrigated acres did not make the cease-and-desist order void.

---

[66] See *State ex rel. Spung v. Evnen, supra* note 48.

[67] Brief for appellees on cross-appeal at 38.

[68] § 46-746(1).

- 705 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
319 NEBRASKA REPORTS
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

Moreover, it is not clear that the decertification will be perpetual. Under the version of LRNRD's rules in our record, rule 6-6 contains a process by which a landowner could seek to have acres certified. To the extent that the parties referred to a more recent rule governing the process, we are not persuaded that there is a significant difference.

### 4. ATTORNEY FEES

Finally, LRNRD alleges that this court should reverse the district court's award of attorney fees. The court awarded attorney fees to SBS in the amount of $19,309.08 and to Seeman in the amount of $26,750.08.

Neb. Rev. Stat. § 25-2165 (Reissue 2016) authorizes attorney fees if a peremptory writ of mandamus is issued. But such an award is discretionary—the statute provides that "the court may also award costs and reasonable attorney's fees."[69]

Because we have determined that the court erred in issuing the writ requested by Seeman, the award of attorney fees to him is not authorized by § 25-2165 and must be reversed. On the other hand, we have upheld the issuance of the writ on behalf of SBS. We cannot say that the court's decision to award attorney fees to SBS was an abuse of that discretion. Thus, we affirm the award of fees to SBS.

### VI. CONCLUSION

For the reasons provided above, we conclude the following:
- Where a corporation owns real estate having certified irrigated acres under the Nebraska Ground Water Management and Protection Act, due process requires that the corporation be served with notice reasonably calculated to inform it of the subject and issues involved in the proceeding.
- Under § 46-746(1), a reduction of irrigated acres completed before a person acquires an interest in the real estate is not affected by the acquisition of such interest.

---

[69] § 25-2165.

- 706 -

Nebraska Supreme Court Advance Sheets
319 Nebraska Reports
STATE EX REL. SEEMAN v. LOWER REPUBLICAN NRD
Cite as 319 Neb. 681

Accordingly, we reverse the judgment, including the award of attorney fees, in the action brought by Seeman. In the action brought by SBS, we affirm the district court's judgment as modified above.

JUDGMENT IN NO. S-24-326 REVERSED.
JUDGMENT IN NO. S-24-327 AFFIRMED AS MODIFIED.

STACY, J., participating on briefs.
FUNKE, C.J., not participating.